823 F.2d 553
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Joan PALUBIAK, Individually and as Administratrix of the
Estate of Marc S. Boyd, deceased and Paul
Palubniak, Plaintiffs-Appellants,
v.
Wayne SIEGEL, Defendant and Cross Plaintiff,
v.
AMERICAN FAMILY INSURANCE COMPANY, a Wisconsin Insurer,
Cross Defendant-Appellee.
 No. 86-1580
 United States Court of Appeals, Sixth Circuit.
 July 15, 1987.
 
 Before KEITH and NORRIS, Circuit Judges, and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The issue on appeal in this case is whether Wayne Siegel can be characterized as a person living in the insured's household so as to be covered under the automobile insurance policy issued by American Family Insurance Company to his mother, Lucille Siegel.
 
 
 2
 This action arose from an automobile accident that occurred on August 11, 1982[1] near Oscoda, Michigan. Wayne Siegel was the driver of the car and Marc Boyd was his passenger. Both Siegel and Boyd were enlisted men stationed at Wurtsmith Air Force Base. At the time of the accident, the men were off duty. Siegel had borrowed a car to give a young woman a ride to her home off base. While returning to the base, Siegel failed to stop a stop sign, lost control of the automobile, and struck a tree and a fire hydrant. Siegel was not seriously injured but Boyd received a severe head injury, lapsed into a coma, and never recovered full consciousness. Boyd died from his injuries almost three years later.
 
 
 3
 Prior to enlistment in the Air Force at the age of 17, Siegel lived at his parents' home in Watertown, Wisconsin. He retained his own room at his parents' house, kept some of his possessions there and spent every leave with his family. Siegel paid Wisconsin state income tax; both federal and state returns go to his parents' address in Watertown. He had a savings account in Watertown and in Oscoda. Siegel was not licensed to drive in any state; he had never driven his mother's or his father's car.
 
 
 4
 Siegel's mother was the named insured of a policy issued in Wisconsin by American Family Mutual Insurance Company. The policy extended liability coverage to 'you [Mrs. Siegel] or a relative.' The term 'relative' was defined in the policy as 'a person living in your household, related to you by blood, marriage or adoption.'
 
 
 5
 Plaintiffs-appellants, the family of Marc Boyd, filed an action for damages against Siegel and also sought a judicial declaration that the insurer covered the driver. The declaratory judgment count was dismissed by the trial court. Siegel then filed a cross claim against American Family seeking coverage under the policy. The court ruled in favor of American Family on the cross claim. The Boyds and Siegel subsequently agreed to a consent judgment and it was entered by the court. The consent judgment awarded $8,000,000 plus costs and interest to Marc Boyd's estate and $2,000,000 to its administrator and administratrix. The consent judgment assigned Siegel's appellate rights and his rights under the insurance policy and stated that the Boyds agreed not to satisfy the judgment against Siegel but only through the assignment against the insurer. The Boyds, as Siegel's assignees, appeal the court's ruling that Siegel was not covered under the insurer's policy and, in their own right, appeal the dismissal of their request for declaratory relief.
 
 
 6
 Using Wisconsin law, the state where the insurance contract was executed, a general test for determining coverage of an insured's relative is whether anything has occurred to 'legally destroy' the individual's status as a member of the household, Raymond v. Century Indemnity Co., 264 Wis. 429, 431, 59 N.W. 2d 459, 460 (1953), cited with approval in Doern v. Crawford, 30 Wis. 2d 206, 211, 140 N.W. 2d 193, 194 (1966), or whether the 'household umbilical cord' has been severed, Giese v. Karstedt, 30 Wis. 2d 630, 636, 141 N.W. 2d 886, 889 (1966). Consistent with this test, the district court decided that Siegel no longer possessed the legal status of resident of his parents' household at the time of the accident based on Pamperin v. Milwaukee Mutual Ins. Co., 55 Wis. 2d 27, 197 N.W. 2d 783 (1972).
 
 
 7
 Pamperin sets forth a three-part test for determining resident of a household status:
 
 
 8
 (1) Living under the same roof;
 
 
 9
 (2) In a close, intimate and informal relationship; and
 
 
 10
 (3) Where the intended duration is likely to be substantial, where it is consistent with the informality of the relationship, and from which it is reasonable to conclude that the parties would consider the relationship in contracting about such matters as insurance or in their conduct in reliance thereon.
 
 
 11
 Id. at 37, 197 N.W. 2d at 788.
 
 
 12
 Under Pamperin the first criterion need not be interpreted literally and can be satisfied by a person living temporarily away from the home but with an intent to return. Id. The district court ruled that Siegel failed to show that he intended to return home because he stated in deposition nine months after the accident that he planned to make the military his career. The district court found that no further inquiry into the other two criteria was necessary since the first was not met.
 
 
 13
 Appellants urge that the other two prongs of the Pamperin test should have been considered by the district court. Indeed, the Wisconsin Supreme Court has stated that the 'listing of three factors to be considered does not result in a threefold test with each to be required' or that the failure of one factor would necessarily mean the failure of the test. Belling v. Harn, 65 Wis. 2d 108, 113, 221 N.W. 2d 888, 891 (1974). We find, however, that a further analysis would not change the outcome of the case. The second prong concerning a close and initimate relationship is satisfied but not conclusive in this case but the third prong is not well suited to this factual setting. Courts have used the third prong when a person who is not an immediate family member has come to live in the household. See Pamperin, supra, (a niece staying at her uncle's home for a few weeks was held not to be a resident of the household); see also Quinlan v. Coombs, 105 Wis. 2d 330, 314 N.W. 2d 125 (1981) (two unmarried persons living together in the same household). This factor was also important in considering whether a thirty-two year old adult was considered a resident of the household when living with his parents temporarily. National Farmers Union Property v. Maca, 26 Wis. 2d 399, 132 N.W. 2d 517 (1965). The intentions or expectations of the parties has been held to be relevant and instructive in cases concerning divorce. See, e.g., Belling v. Harn, supra. This prong of the test is better suited to a consideration of more attenuated or splintered relationships and not one concerning a minor child of the immediate family.
 
 
 14
 Appellants also contend that the district court should have given more weight to the two Wisconsin cases involving sons in the military. Raymond, supra, and Giese, supra. We find the facts in these cases to be more compelling in favor of coverage than the facts in the present case. In Raymond the serviceman had the insured's automobile with him while stationed away from home. In Giese the son in the military had left his car at his parent's home to remain in his father's care while he was away. A contention was not made in either Giese or Raymond that the sons did not intend to return home.
 
 
 15
 American Family's showing that Siegel did not intend to return home, ratified by his re-enlistment, was uncontroverted by plaintiffs-appellants who had every opportunity to submit evidence that this was not Siegel's intention at the time of the accident. Summary judgment was properly granted since plaintiff failed to make a showing sufficient to establish the existence of the essential element of intent to return to the insured's household. See Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552-53 (1986).
 
 
 16
 Accordingly, the order of the district court is affirmed.
 
 
 
 [1]
 The joint stipulated statement of facts lists the date of the accident as April 11, 1982. A check of other documents indicates that the April 11 date may be in error but we have accepted August 11 as the date of the accident